1  KENT J. SCHMIDT (SBN 195969)
   schmidt.kent@dorsey.com
2  Dorsey & Whitney LLP
   600 Anton Boulevard, Suite 2000
3  Costa Mesa, CA 92626
   Telephone: (714) 800-1400
4  Facsimile: (714) 800-1499

5  STEVEN J. WELLS
   (to be admitted *pro hac vice*)
6  TIMOTHY J. DROSKE
   (to be admitted *pro hac vice*)
7  Dorsey & Whitney LLP
   50 South Sixth Street, Suite 1500
8  Minneapolis, Minnesota 55402-1498
   Telephone: (612) 340-2600
9  Facsimile: (952) 487-2053

10 DARREN P. TRONE (CA SBN 140303)
   tronelaw@msn.com
11 Law Offices of Darren P. Trone
   3838 Orange Street
12 Riverside, California 92501
   Telephone: (951) 686-2975
13 Fax: (951) 686-2977

14 Attorneys for Plaintiff
   DEL REAL, LLC

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| DEL REAL, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California, EDMUND G. BROWN, in his official capacity as Governor of California, and the STATE OF CALIFORNIA<br><br>Defendants. | CASE NO: _____<br><br>**COMPLAINT FOR:**<br><br>1. **Declaratory Relief and**<br>2. **Injunctive Relief** |

1

COMPLAINT

Plaintiff DEL REAL, LLC ("Del Real") makes and files this Complaint against Defendants KAMALA D. HARRIS, in her official capacity as Attorney General of California, EDMUND G. BROWN, in his official capacity as Governor of California, and the STATE OF CALIFORNIA (collectively, "Defendants") and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory and injunctive relief under 28 U.S.C. § 2201. As set forth below, Del Real seeks a declaration from this Court that: (i) California's Fair Packaging and Labeling Act ("CFPLA"), as it applies to regulation of "nonfunctional slack fill" in the packaging of meat and poultry products, is preempted by the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601 *et seq.*, and the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. § 451, *et seq.*, and their implementing regulations, which regulate the marking, labeling, and packaging of meat, poultry, and meat and poultry products, respectively, in the United States; (ii) Section 12606.2 is inapplicable under its own terms in regulating "slack fill" requirements with respect to meat and poultry products, because its requirements are not the same as those imposed by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d), and (iii) Del Real's meat and poultry products do not violate the CFPLA because, under Section 12612, the products comply with federal requirements for weight, measure, or count.

## THE PARTIES

2. Plaintiff Del Real is a limited liability company organized and existing under the laws of the State of California and having its headquarters in Mira Loma, California.

3. Del Real is a California limited liability company, with offices and production facilities in Riverside, California. At these facilities, Del Real prepares, packages and sells premium Mexican dishes that are packaged in fully cooked heat and serve containers, that are distributed to and sold in every district in California, including the Eastern District of California.

1    4.   Defendant State of California is a State that, through its officers and
2 agencies, including Defendant Edmund G. Brown, the Governor of the State of California,
3 and Defendant Kamala Harris, the Attorney General of the State of California, enforces
4 the CFPLA, Sections 12601 – 12615.5 of the California Business & Professional Code.
5 (Unless otherwise indicated, all references to "Section" herein refer to the indicated
6 California Business and Professions Code section.)
7    5.   The State of California, acting through County District Attorney's Offices,
8 has threatened to file a law enforcement action against Del Real Foods for alleged
9 violation of CFPLA's nonfunctional slack fill prohibition, specifically that found in
10 California Business & Professions Code Section 12606.2. Violations of the CFPLA may
11 give rise to law enforcement actions under California's Unfair Competition Law,
12 California Business & Professions Code Section 17200, *et seq.*, through which a court
13 may enjoin any person who engages, has engaged, or proposes to engage in unfair
14 competition, and impose civil penalties of up to $2,500 for each violation.

## JURISDICTION AND VENUE

16    6.   Jurisdiction is proper under 28 U.S.C. § 1331 because this case involves
17 claims that arise under the United States Constitution. *See Shaw v. Delta Air Lines, Inc.*,
18 463 U.S. 85, 96 n.14 (1983). All other claims arise out of a common nucleus of operative
19 fact with the federal claims and form part of the same case and controversy, thus giving
20 rise to supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.
21    7.   Venue is proper in this judicial district. Del Real prepares and packages
22 products in California that are distributed to, and sold in, every district in California,
23 including the Eastern District of California. The CFPLA's nonfunctional slack fill
24 prohibition, if applied to or enforced against Del Real, would directly affect the
25 distribution and sale of their products in the Eastern District of California and would
26 impact their interests in the Eastern District of California. In addition, the California
27 Department of Food & Agriculture investigation that gave rise to the present controversy

was conducted in the Eastern District. Thus, the controversy alleged herein arises in the State of California, including the Eastern District of California.

## NECESSITY OF DECLARATORY RELIEF

8. An actual controversy has arisen and now exists because Del Real has been threatened with law enforcement action if it does not comply with the slack fill provisions of the CFPLA, as interpreted by the Defendants. The State of California, operating through county district attorneys, has contacted Del Real to inform it that County Departments of Weights & Measures, in cooperation with the California Department of Food & Agriculture, conducted an investigation of Del Real's food products and concluded its packaging was in violation of Section 12606.2's slack fill requirements. Law enforcement actions have been threatened.

9. As set forth below, the slack fill requirements in the CFPLA are preempted by federal law and inapplicable under the CFPLA's own terms.

10. Section 12606.2, and correspondingly, Section 12606, are preempted by federal law because the FMIA and PPIA both expressly preempt "different" or "additional" packaging requirements imposed by state law.

11. Sections 12606.2 is also inapplicable to Del Real's meat and poultry products because, under the CFPLA's own terms, Sections 12606.2 is inoperative to the extent it differs from the Federal Food Drug & Cosmetics Act, which excludes meat and poultry products from its scope.

12. The CFPLA is also inapplicable under its own terms to Del Real's meat and poultry products because, under Section 12612, the CFPLA is not violated if, as is the case here, Del Real's products comply with federal requirements for weight, measure or count.

13. Del Real seeks a declaration from this Court that the CFPLA's slack fill requirements are not enforceable as to its meat and poultry products. Specifically, Del Real seeks a declaration that the FMIA, the PPIA, their objectives, amendments, and implementing regulations, and the USDA's objectives in implementing the FMIA and

4

PPIA, preempts the CFPLA and that the CFPLA's slack fill requirements are inapplicable under their own terms to meat and poultry products.

14. Such a declaration is necessary and proper at this time so that Del Real may have certainty as to its legal obligations and conduct business without exposure to potential law enforcement actions, injunction of their activities and civil penalties.

15. Absent a judicial declaration that the CFPLA's slack fill requirements are preempted and unenforceable as to meat and poultry products, Del Real is forced to choose between compliance with California requirements inapplicable to its meat and poultry products, or risking exposure to law enforcement actions, injunction, and significant monetary penalties under the CFPLA despite complying with the applicable requirements under the FMIA and PPIA. In addition, Del Real risks having to bear the cost of having to defend against enforcement actions pursuant to the CFPLA.

16. The actual controversy presented to this Court is ripe for adjudication and suitable for judicial determination. It is an existing legal dispute between the parties regarding a discrete issue and is based on ongoing and prospective conduct. There are no relevant or effective administrative remedies available to Del Real that would resolve the matter. The only way for Plaintiff to obtain a binding pre-enforcement determination that their products are exempt from the CFPLA's slack fill requirements is via declaratory judgment.

## GENERAL ALLEGATIONS

A. **Overview of the State Statutory Provision: California Business & Professional Code's Slack Fill Requirements in Section 12606.2 and 12606**

17. The CFPLA regulates, among other things, the slack fill requirements for food containers in particular (Section 12606.2), and other containers more generally (Section 12606). As compared to federal law governing the fill requirements for meat and poultry products under the FMIA and PPIA, the CFPLA dramatically expands the prohibitions on and regulations concerning the slack fill in food containers by making the presence of any nonfunctional slack fill a violation of California law. The CFPLA

5

imposes penalties for violations of the statute. Cal. Bus. & Prof. Code § 12615.5. Moreover, violations of the CFPLA can give rise to violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. § 17200, *et seq.*, and injunctions and civil penalties under that statute. Cal. Bus. & Prof. Code §§ 17203-17207. Del Real and its employees are thus subject to law enforcement actions, injunction, and civil penalties for their meat and poultry products' purported and threatened violation of the CFPLA.

    18.    Particularly at issue are the following provisions of Section 12606.2, which regulate the fill requirements for food containers:

> (b)    No food containers shall be made, formed, or filled as to be misleading;
> 
> (c)    A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to less than its capacity for reasons other than the following:
> 
> (1)    Protection of the contents of the package.
> 
> (2)    The requirements of the machines used for enclosing the contents in the package.
> 
> (3)    Unavoidable product settling during shipping and handling.
> 
> (4)    The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.
> 
> (5)    The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.
> 
> (6)    Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

6

Cal. Bus. & Prof. Code § 12606.2.

19. Cal. Bus. & Prof. Code § 12606 contains substantively similar fill requirements, but are not specific to food containers: Cal. Bus. & Prof. Code § 12606(b).

20. The CFPLA expressly recognizes that its scope is cabined by federal law. Under its own terms, Section 12606.2, the section specific to "food containers," is "not operative to the extent it is not identical to the federal requirements" of the Food, Drug, and Cosmetic Act (21 U.S.C. § 343(d)). Cal. Bus. & Prof. Code § 12606.2(e).

21. Moreover, the CFPLA recognizes that commodities complying with federal requirements are not in violation of the State law:

> The sale of any commodity packaged in a container, wherein both the container and the contents thereof comply with any act of Congress or rules or regulations promulgated thereunder, appertaining to weight, measure or count, does not violate the provisions of this chapter . . .

Cal. Bus. & Prof. Code § 12612.

**B.    Overview of the Governing Federal Statutes**

    **1.    The Preempting Statutes: The Federal Meat Inspection Act and the Poultry Products Inspection Act**

22. The FMIA was passed in 1907 in response to Upton Sinclair's *The Jungle*. When the book's documentation of unsanitary packing practices at large Chicago stockyards shook the American public's confidence in the safety of meat, leaders of the meat industry joined the public in calling for legislation and regulation to reform the industry, recognizing that a uniform inspection and processing system were necessary to restore the public's faith in the safety of meat.

23. Recognizing that meat is an important source of the nation's food supply, Congress enacted the FMIA with the objective of protecting the markets for wholesome and unadulterated meat by assuring consumers that the meat products they consume satisfy uniform standards established by the federal government. 21 U.S.C. § 602.

24. In order to advance those objectives, the FMIA establishes a comprehensive and uniform federal scheme regulating labeling, processing, inspection and packaging of

7

meat in a manner that ensures that all meat sold to consumers is wholesome, not adulterated, and properly marked, labeled, and packaged. 21 U.S.C. § 601 *et seq.*

25. Similarly, the PPIA was passed in 1957 to extend uniform federal regulation to poultry products, to prevent adulterated or misbranded poultry products from being sold as food, and to ensure that poultry and poultry products are, inter alia, properly marked, labeled, and packaged. 21 U.S.C. § 451 *et seq.*

26. As relevant here, Congress has expressly placed the regulation of meat and poultry products' marking, labeling, packaging, and ingredient requirements within the domain of the federal government and prohibited states from attempting to impose any "additional" or "different" requirements.

27. Specifically, to ensure uniformity and effectiveness of federal meat safety inspection regulation, the FMIA includes an express preemption provision that states, in relevant part:

> Marking, labeling, *packaging*, or ingredient *requirements in addition to, or different than, those made under this chapter may not be imposed by any State* . . . with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter, but any State . . . may, consistent with the requirements under this chapter, exercise concurrent jurisdiction with the Secretary over articles required to be inspected under said subchapter I, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or in the case of imported articles which are not at such an establishment, after their entry into the United States.

21 U.S.C. § 678 (emphasis added). The PPIA includes a virtually identical preemption provision:

> Marking, labeling, *packaging*, or ingredient *requirements* (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) *in addition to, or different than, those made under this chapter may not be imposed by any State* . . . with respect to articles prepared at any official establishment in accordance with the requirements under this chapter, but any State . . . may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States.

8

COMPLAINT

21 U.S.C. § 467e (emphasis added).

28. Both the FMIA and the PPIA impose packaging requirements that relate to the fill of containers. First, both statues define the term "misbranded" as applying to any meat or poultry product "if its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 601(n)(4) (FMIA); 21 U.S.C. § 453(h)(4) (PPIA). The same definition also appears in the corresponding federal regulations for each Act. 9 C.F.R. § 301.2 (FMIA); 9 C.F.R. § 381.1 (PPIA).

29. Both Acts similarly have a statutory provision covering container standards. 21 U.S.C. §§ 607, 457. These sections provide the Secretary authority to promulgate regulations for the standards of fill of containers:

> The Secretary, whenever he determines such action is necessary for the protection of the public, may prescribe: . . . (2) . . . *standards of fill of container* for such articles not inconsistent with any such standards established under the Federal, Food, Drug, and Cosmetic Act [21 U.S.C.§ 301, et seq.], and there shall be consultation between the Secretary and the Secretary of Health and Human Services prior to the issuance of such standards under either Act relating to articles subject to this chapter to avoid inconsistency in such standards and possible impairment of the coordinated effective administration of this chapter and the Federal Food, Drug, and Cosmetic Act. There shall also be consultation between the Secretary and an appropriate advisory committee provided for in section 661 [or 454] of this title, prior to the issuance of such standards under this chapter, to avoid, insofar as feasible, inconsistency between Federal and State standards.

21 U.S.C. §§ 607(c), 457(b) (emphasis added).

30. Moreover, the next subpart of each respective statute states:

> No article subject to this [sub]chapter shall be sold or offered for sale . . . under any name or other marking or labeling which is false or misleading, *or in any container of a misleading form or size*, but established trade names and other marking and labeling and containers which are not false or misleading and which are approved by the Secretary are permitted.

21 U.S.C. §§ 607(d), 457(c) (emphasis added).

31. Neither the FMIA nor the PPIA contain any prohibition on all nonfunctional slack fill as *per se* misleading.

32. Similarly, the regulations promulgated under the FMIA and PPIA prohibit containers "filled as to be misleading," but nothing more, and do not provide that a

1  container is misleading if it contains nonfunctional slack fill. 9 C.F.R. § 317.8(a) (FMIA);
2  9 C.F.R. § 381.129(a) (PPIA).
3  　　　　33.　　Thus, federal regulations do not provide that all nonfunctional slack fill is
4  *per se* misleading, and leaves regulators to exercise their own judgment as to whether any
5  particular packaging, when considered in whole, is genuinely misleading. In contrast,
6  Sections 12606.2 and 12606 define nonfunctional slack fill as *per se* misleading and
7  prohibited. Slack fill is only permitted if it is exempted from the definition of
8  "nonfunctional slack fill" by falling under one of a number of specifically enumerated
9  exceptions. Instead of allowing federal inspectors to determine whether packaging is
10 misleading, Sections 12606.2 and 12606 expressly forbid nonfunctional slack fill and
11 thereby permits the State to demand that companies alter the way they package their
12 products under threat of law enforcement action, injunction, or civil penalties. Thus, the
13 California law establishes "additional" and "different" requirements for the packaging of
14 meat and poultry products.

### 2. The FMIA and PPIA Preclude Application of the Federal Food, Drug, and Cosmetic Act to Meat and Poultry Products

17 　　　　34.　　The Federal Food, Drug, and Cosmetic Act is expressly referenced in
18 Section 12606.2 of the CFPLA as rendering that California section "not operative to the
19 extent that it is not identical" to the federal requirements under the Federal, Food, Drug,
20 and Cosmetic Act ("FDCA").
21 　　　　35.　　Meat and poultry products are expressly exempt from the FDCA's
22 requirements. The FDCA specifically provides that:

> Meats and meat food products shall be exempt from the provisions of this chapter [the FDCA] to the extent of the application or the extension thereto of the Meat Inspection Act, approved March 4, 1907, as amended [21 U.S.C. § 601, *et seq.*].

25 21 U.S.C. § 392(a). Correspondingly, the PPIA provides:

> Poultry and poultry products shall be exempt from the provisions of the Federal Food Drug and Cosmetic Act to the extent of the application or extension thereto of the provisions of this chapter [the PPIA] . . . .

28 21 U.S.C. § 467f(a).

10

### 3. Compliance with the FMIA's and PPIA's Weight, Measure, or Count Requirements Precludes Any Violation of the CFPLA Per Section 12612

36. Federal regulations under the FMIA and PPIA specifically address weight, measure, and count requirements for packaged meat and poultry products. *See e.g.*, 9 C.F.R. § 317.2(h)&(i), Part 442

37. Section 12612 of the CFPLA, for its part, expressly recognizes that the CFPLA is not violated when commodities are sold "wherein both the container and the contents thereof comply with any act of Congress or rules or regulations promulgated thereunder, appertaining to weight, measure or count."

38. Thus, no violation of the CFPLA exists so long as Del Real's meat and poultry products comply with federal weight, measure or count requirements under the regulations promulgated under the FMIA and PPIA.

### C. Application of Section 12606.2 Imposes Substantial Burdens on Plaintiff

39. The immediate potential for liability under State law is illustrated by considering the impact the CFPLA slack fill requirements will have on the packaging, distribution, and sale of Del Real's meat and poultry products in California, that fully comply with the FMIA and PPIA.

#### 1. Del Real's Packaging

40. Del Real prepares, packages, and sells premium Mexican dishes that are packaged in fully cooked heat and serve containers. This occurs at facilities subject to USDA inspection under the FMIA and PPIA. Sixteen ounce containers of Del Real's meat and poultry products are sold in grocery stores throughout the State of California, while thirty-two and forty ounce containers are sold at club stores throughout the State. The 16 ounce products include Carnitas, Chile Verde, Beef Barbacoa, Shredded Chicken, Shredded Beef, Chicken Chile Verde, and Grilled Chicken. Thirty-two ounce products include Carnitas, Beef Barbacoa, Chile Verde (Pork in Green Sauce), Shredded Beef,

11

COMPLAINT

Shredded Chicken, and Chicken Tinga. Carnitas and Grilled Chicken are also available in forty ounce containers.

41. All of the sixteen ounce products sold at retail grocery stores are packaged in one form of tray, while all of the thirty-two and forty ounce products sold at club stores are packaged in another tray. This "one tray fits all" approach is important so that there is consistency across Del Real's product line both for product branding and brand recognition, as well as the practical realities of how retailers display the products on the shelf.

42. The slack fill, or difference between the actual capacity of the trays and the volume of Del Real product contained therein, exists for a number of different reasons.

43. First, Del Real's Carnitas product stands out among its competitors in that it is packaged in large chunks, a feature that makes the product more authentic and of higher quality. Vertical slack fill, however, is a necessary byproduct of ensuring that the Carnitas is packaged in an intact chunk, and this same vertical footprint is then needed for all of Del Real's other products in order to maintain consistency. Correspondingly, the horizontal footprint of Del Real's Carnitas product cannot be reduced without undermining the packaging uniformity with Del Real's other products.

44. Similarly, all of Del Real's products in which broth is added – which is all of its products except Grilled Chicken and Carnitas – require the slack fill present in order for the packaging machines to properly enclose the product. Moreover, changing the container to eliminate slack fill for the two products that do not add broth would, as already discussed, undermine the uniformity throughout its product line that it is important for Del Real to maintain.

45. Finally, the design of the tray allows consumers to heat the product in the tray without using any extra dish, and to then handle the container without getting burned. These features of the tray are critical given that a central component to Del Real's products is that consumers can "treat [themselves] to a traditional Mexican meal in a

matter of minutes with [Del Real] fully cooked heat and serve dishes." Del Real, Products Page, *available at* http://www.delrealfoods.com/products.htm.

46. To date, Del Real in unaware of any investigation, allegation, or prosecution by the federal government for any violation of the FMIA's or PPIA's fill requirements with respect to the Del Real meat and poultry products described above.

### 2. The State's Threatened Law Enforcement Action Against Del Real

47. In 2010, the California Department of Food and Agriculture investigated the slack fill present in sixteen ounce containers of two of Del Real's products: Chile Verde – Pork in Green Sauce and Carnitas – Fried Pork. Both of these packages were purchased and inspected in the Eastern District of California. Similar inspections of the same products were done by County Departments of Weights & Measures in the State, with one county also inspecting Del Real's forty ounce Carnitas, and sixteen and thirty-two ounce containers of Chicken Chile Verde. All concluded that Del Real's meat or poultry products violated the nonfunctional slack fill prohibitions in Sections 12606.2 or 12606.

48. On November 14, 2011, the State of California, operating through the Consumer Protection Divisions of County District Attorney's Offices, formally alleged that Del Real has been and continues to be in violation of California's Unfair Competition Law, including but not limited to the provisions contained within CFPLA § 12606.2(b) and (c), citing a purported "pattern of non-functional slack fill in food containers offered for sale by Del Real Foods." These district attorney offices made clear that this letter was intended to be followed by "our filing a law enforcement action."

49. On June 27, 2012, one of the county district attorney's office's sent Del Real a copy of March 2012 Inspection Reports of Del Real Foods products conducted by two County Departments of Weights & Measures. These included non-functional slack fill investigations of Del Real's sixteen ounce Chile Verde – Pork, Carnitas, and Pollo Asado (Grilled Chicken); thirty-two ounce containers of Carnitas and Chile Verde – Pork; and forty ounce container of Pollo Asado (Grilled Chicken).

50. On September 12, 2012, the State of California, through the same county district attorney's office, again threatened legal enforcement under CFPLA § 12606.2 in the absence of a "global final settlement involving monetary penalties, restitution, costs and injunctive provisions."

51. Accordingly, Del Real is under an imminent threat of law enforcement action under the slack fill prohibitions found in the CFPLA, particularly Section 12606.2. Del Real could be subject to law enforcement action, injunction, and civil penalties for packaging its meat and poultry products in a manner fully consistent with the fill requirements contained in the FMIA and PPIA, simply because its packaging contains a quantity of slack fill. This is so even if its products as currently packaged do not actually mislead consumers and accurately inform consumers of the quantities and proportions of the food contained therein. Thus, in order to avoid such law enforcement action, Del Real would be forced to expend time and money to re-tool its entire packaging process at great expense in order to eliminate slack fill which is not misleading under federal law. Under preemption principles and the terms of the California law itself, the State of California is precluded from enforcing these slack fill requirements against Del Real's meat and poultry products.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment; Preemption)

52. Del Real incorporates the foregoing allegations of each of the previous paragraphs by reference as though alleged in full at this point.

53. Application of Section 12606.2 to federally-regulated meat and poultry packaging violates Article VI, Section 2 of the United States Constitution (the "Supremacy Clause").

54. Under the Supremacy Clause, federal law preempts state law where, as here, Congress expresses an intent to preempt state law through explicit statutory language. The FMIA explicitly prohibits states from imposing "additional" or "different" marking,

labeling, and packaging requirements on meat and poultry governed by the FMIA and the PPIA. 21 U.S.C. § 678; 21 U.S.C. § 467e.

55. Because any "slack fill" requirement that would be imposed by Section 12606.2 so as to deem all nonfunctional slack fill misleading, either through the express language of Section 12606.2(c) or through an interpretation of Section12606.2(b), would be "additional" to and "different" from federal packaging requirements, Section 12606.2, as applied to meat and poultry products is preempted by the FMIA and PPIA.

56. For the same reason, any "slack fill" requirement under Section 12606 deeming all nonfunctional slack fill misleading, is similarly preempted by the FMIA and PPIA as to meat or poultry products.

57. Del Real is therefore entitled to a judgment declaring that the FMIA, 21 U.S.C. § 601 *et seq.*, the PPIA, 21 U.S.C. § 451, *et seq.*, and their implementing regulations, preempt Sections 12606.2 and 12606 as applied to meat and poultry products regulated by the FMIA or PPIA.

58. Such a declaration is necessary and appropriate at this time to determine the rights and obligations of the parties.

## SECOND CAUSE OF ACTION

**(Declaratory Judgment; Under Its Own Terms Section 12606.2 is Inapplicable to Meat and Poultry Products)**

59. Del Real incorporates the foregoing allegations of each of the previous paragraphs by reference as though alleged in full at this point.

60. Section 12606.2 is "not operative" to the extent it imposes requirements that are not "the same" as the requirements of the FDCA. Cal. Bus. & Prof. Code § 12606.2(e).

61. Meat and poultry products are expressly exempt from the FDCA under 21 U.S.C. § 392(a) and 21 U.S.C. § 467f(a), respectively.

62. Thus, to the extent Section 12606.2 attempts to regulate meat and poultry products, it is not "the same" as the requirements of the FDCA.

1  63. Accordingly, Del Real is entitled to a judgment declaring that Section
2  12606.2 is "not operative" under its own terms as applied to meat and poultry products.
3  64. Such a declaration is necessary and appropriate at this time to determine the
4  rights and obligations of the parties.

### THIRD CAUSE OF ACTION
### (Declaratory Judgment; Inapplicable under Section 12612)

7  65. Del Real incorporates the foregoing allegations of each of the previous
8  paragraphs by reference as though alleged in full at this point.
9  66. The CFPLA provides that the "sale of any commodity packaged in a
10 container" does not violate the CFPLA if it complies with "any act of Congress or rules or
11 regulations promulgated thereunder appertaining to weight, measure or count. . ." Cal.
12 Bus. & Prof. Code § 12612.
13 67. On information and belief, Del Real's packaging practices for its meat and
14 poultry products comply with all applicable weight, measure, or count requirements
15 contained within, and promulgated under, the FMIA and PPIA.
16 68. To date, Del Real in unaware of any investigation, allegation, or prosecution
17 by the federal government for any violation of the FMIA's or PPIA's weight, measure, or
18 count, requirements, including the FMIA's and PPIA's fill requirements, with respect to
19 Del Real's meat and poultry products.
20 69. Accordingly, Del Real is entitled to a judgment declaring that Del Real's
21 packaging practices are in compliance with federal law and, accordingly, do not violate
22 California law.
23 70. Such a declaration is necessary and appropriate at this time to determine the
24 rights and obligations of the parties.

### FOURTH CAUSE OF ACTION
### (Injunctive Relief)

27 71. The enforcement or threat of enforcement of the CFPLA will cause
28 immediate and irreversible injury to Del Real, including, but not limited to, loss of

COMPLAINT

opportunity, disruption of business, lost profits, diminution in value, and fines and penalties.

72. Because the State's conduct causes harm that cannot be adequately compensated in damages, Del Real requests that the Court issue preliminary and permanent injunctive relief enjoining the Defendants and any other agency, county, or other entity acting under the authority of California law from enforcing Sections 12606.2 and 12606 of the CFPLA, or any other law or regulation with substantially the same requirements, against Del Real's meat and poultry products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1. For a judgment in its favor on each and every cause of action alleged in the Complaint:

   (a) A judgment declaring that the FMIA, 21 U.S.C. § 601 *et seq.*, and the PPIA, 21 U.S.C. § 451, *et seq.*, and their objectives, amendments, implementing regulations, preempt Sections 12606 and 12606.2, as applied to meat and poultry;

   (b) A judgment declaring that Section 12606.2 is non-applicable to meat and poultry products under its own terms because the FDCA does not regulate meat and poultry;

   (c) A judgment declaring that Sections 12606.2 and 12606 are not applicable against Del Real's meat and poultry products under Cal. Bus. & Prof. Code § 12612, because Del Real's packaging practices comply with all applicable federal law and regulations;

2. For attorneys' fees to the extent permitted by law;

3. For the preliminary and permanent injunctive relief as set forth above;

///

///

///

4. For costs of suit; and

5. Such other and further relief as the Court deems just and proper.

Date: October 11, 2012

Respectfully submitted,

DORSEY & WHITNEY LLP

By: /s/ Kent J. Schmidt
    KENT J. SCHMIDT
    Attorneys for Plaintiff
    DEL REAL, LLC

COMPLAINT